**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| 3C, LLC d/b/a 3Chi,  MIDWEST HEMP ) COUNCIL, INC., and  WALL'S ORGANICS LLC, ) | |
| )<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ATTORNEY GENERAL TODD ROKITA,  in his )<br>official capacity, HUNTINGTON POLICE )<br>DEPARTMENT, DETECTIVE SERGEANT )<br>DARIUS HILLMAN, in his official capacity, )<br>HUNTINGTON COUNTY PROSECUTOR, )<br>JEREMY NIX, in his official capacity, )<br>EVANSVILLE POLICE DEPARTMENT, )<br>DETECTIVE SERGEANT NATHAN HASSLER, )<br>in his official capacity, and VANDERBURGH )<br>COUNTY PROSECUTOR DIANA MOERS, in )<br>her official capacity. )<br>)<br>Defendants. ) | CASE NO. 1:23-cv-1115-JRS-MKK |

<u>**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

Plaintiffs, 3C, LLC d/b/a 3Chi ("3Chi"), Midwest Hemp Council, Inc., and Wall's

Organics LLC, by counsel, for their Amended Complaint against Defendants, Attorney General

Todd Rokita, in his official capacity ("AG Rokita"), Huntington Police Department, Detective

Sergeant Darius Hillman, in his official capacity ("Detective Sergeant Hillman"), Huntington

County Prosecutor Jeremy Nix, in his official capacity ("Prosecutor Nix"), Evansville Police

Department, Detective Sergeant Nathan Hassler, in his official capacity ("Detective Sergeant

Hassler"), and Vanderburgh County Prosecutor Diana Moers, in her official capacity

("Prosecutor Moers"), state as follows:[1]

---

[1] This Complaint is being amended due to the recent arrests, raids, threats, and seizures by the Huntington Police Department and Evansville Police Department against businesses in Huntington and Evansville, Indiana, which all occurred in August 2023 after the filing of Plaintiffs' initial Complaint.

1.     This is a lawsuit challenging the Attorney General's Official Opinion 2023-1 ("Official Opinion") and those who rely on it. The Official Opinion attempts to unilaterally reclassify low THC hemp extracts as Schedule I controlled substances in direct conflict with well-established state and federal laws encouraging the redevelopment of a domestic supply chain of hemp and hemp products in Indiana and across the country.

2.     On March 21, 2018, Governor Holcomb signed into law Senate-Enrolled Act 52 ("SEA 52"), which became effective on the day of the Governor's signature.

3.     SEA 52 encourages the manufacturing, distribution, retail sale, and possession of low THC hemp extracts that meet certain quality control standards by, in part, exempting "low THC hemp extract" from the definition of "marijuana," "hashish," "hashish oil," "controlled substance," and "controlled substance analog."

4.     On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"). The 2018 Farm Bill provided for an expanded definition of "hemp" to include "***all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not,*** with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C.A. § 1639o(1) (emphasis added).

5.     In short, the only relevant statutory metric in analyzing whether a product is to be considered hemp or marijuana under Indiana or federal law is the concentration of Delta-9 THC on a dry weight basis. If it is not more than .3 percent Delta-9 on a dry weight basis then it is hemp; if it is more than .3 percent, it is marijuana.

6.     This deliberate distinction between hemp, an agricultural commodity under Indiana and federal law, and marijuana, a Schedule I controlled substance under Indiana and federal law, has led to a robust low THC hemp extract market that Indiana has chosen to incentivize over the last five years.

7.     After five years of well-established law, AG Rokita's Official Opinion suddenly seeks to unilaterally declare popular low THC hemp extracts Schedule I controlled substances, which deviates from established state and federal law; would lead to thousands of lost jobs around the state; and abruptly turns farmers, business owners, and consumers into criminals overnight despite no change in state or federal law.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

10.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

11.     This action is also brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

## THE PARTIES

12.     Plaintiff 3Chi is a Colorado limited liability company headquartered in Indianapolis, Indiana.

13.     3Chi is the world's largest manufacturer and distributor of low THC hemp extract products like Delta-8 THC.

14. 3Chi wishes to continue to manufacture, distribute, and sell low THC hemp extract products like Delta-8 THC that are legal under state and federal law in order to meet the strong consumer demand for these products.

15. Plaintiff Midwest Hemp Council is a non-profit trade organization dedicated to providing information and advocacy for the whole hemp plant industry in Indiana and surrounding states on behalf of its members.

16. Members of the Midwest Hemp Council include farmers, manufacturers, laboratories, retail owners, and consumers of low THC hemp extracts who (under AG Rokita's Official Opinion) now all face criminal liability for their respective participation in the low THC hemp extract market.

17. Plaintiff Wall's Organics is an Indiana limited liability company with its principal place of business located in Evansville, Indiana, where it sells low THC hemp extract products.

18. Defendant AG Rokita is sued in his official capacity due to the publication of the Official Opinion, which seeks to unilaterally reclassify low THC hemp extracts as Schedule I controlled substances contrary to existing state and federal law.

19. Defendant Huntington Police Department is named as a Defendant due to the arrests, raids, threats, and seizures of property it made in direct response to AG Rokita's Official Opinion.

20. Detective Sergeant Hillman is named in his official capacity due to his participation in arrests, raids, threats, and seizures of property in Huntington, Indiana that were made in direct response to AG Rokita's Official Opinion.

21.     Prosecutor Nix is named in his official capacity due to his involvement with the arrests in Huntington County in direct response to AG Rokita's Official Opinion, and his ability to prosecute those arrested.

22.     Defendant Evansville Police Department is named as a Defendant due to the arrests, raids, threats, and/or seizures of property it made in direct response to AG Rokita's Official Opinion, including against Wall's Organics.

23.     Detective Sergeant Hassler is named in his official capacity due to his participation in the arrests, raids, threats, and/or seizures of property in Evansville, Indiana made in direct response to AG Rokita's Official Opinion, including against Walls' Organics.

24.      Prosecutor Moers is named in her official capacity due to her involvement with the arrests and/or threats in Vanderburgh County in direct response to AG Rokita's Official Opinion, and her ability to prosecute those arrested.

**FACTS COMMON TO ALL COUNTS**

25.     On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"). The 2014 Farm Bill provided that, "[n]otwithstanding the Controlled Substances Act . . . or any other Federal law, an institution of higher education . . . or a State department of agriculture may grow or cultivate industrial hemp," provided it is done "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities are allowed under the relevant state's laws. 7 U.S.C. § 5940(a).

26.     The 2014 Farm bill defines "industrial hemp" as the "plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(a)(2).

27.     The 2014 Farm Bill defines an "agricultural pilot program" as a "pilot program to study the growth, cultivation, or marketing of industrial hemp … in States that permit the growth or cultivation of industrial hemp under the laws of the state in a manner that[:] ensures that only institutions of higher education and State departments of agriculture are used to grow or cultivate industrial hemp[;] requires that sites used for growing or cultivating industrial hemp in a State be certified by, and registered with, the State department of agriculture[;] and authorizes State departments of agriculture to promulgate regulations to carry out the pilot program in the States in accordance with the purposes of [Section 7606 of the 2014 Farm Bill]." 7 U.S.C. § 5940(a)(2).

28.     On March 26, 2014, in direct response to the 2014 Farm Bill, Governor Mike Pence signed into law Senate-Enrolled Act 357, P.L. 165-2014 ("SEA 357"), authorizing the production, possession, scientific study, and commerce of industrial hemp in Indiana pursuant to Indiana Code § 15-15-13.

29.     SEA 357 permanently removed industrial hemp from the state's definition of "marijuana." Ind. Code § 35-48-1-19.

30.     Indiana Code § 15-15-13 requires anyone wishing to grow or handle industrial hemp for commercial or research purposes to first obtain a license from the Indiana State Seed Commissioner by partnering with an institution of higher education, registering the cultivation site(s) via GPS coordinates, and passing a background check among other requirements.

31.     Since the adoption of the SEA 357 in 2014, Indiana farmers have begun growing hemp subject to licensing requirements under state law and Indiana small businesses have been selling hemp and hemp products. Purdue University's Department of Agronomy has been actively involved in promoting the production of hemp, which Indiana soils are well-suited to produce.

32.     Since 2014, the Indiana Seed Commissioner has issued over 500 licenses authorizing the production of approximately 15,000 acres of hemp in Indiana.

33.     On December 20, 2018, President Donald Trump signed into law the 2018 Farm Bill. A copy of the 2018 Farm bill is attached as *Exhibit 1*.

34.     The 2018 Farm Bill permanently removes hemp from the Controlled Substances Act and requires the United States Department of Agriculture ("USDA") to be the sole federal regulator of hemp production leaving no role for the Drug Enforcement Agency ("DEA"). The Food and Drug Administration ("FDA") retains jurisdiction over ingestible and topical hemp products.

35.     The 2018 Farm Bill expands the definition of hemp by defining it as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof *and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not,* with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C.A. § 1639o(1) (emphasis added). Thus, the 2018 Farm Bill broadly defines hemp as including all products derived from hemp, so long as the THC concentration is not more than 0.3 percent Delta-9 THC, and it is agnostic on manufacturing processes.

36.     The Conference Report for the 2018 Farm Bill makes it clear that Congress intended to preclude a state from adopting a more restrictive definition of hemp: "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp, *but are not authorized to alter the definition of hemp* or put in place policies that are less restrictive." Conference Report for Agricultural Improvement Act of 2018, p. 738 (emphasis added). A true and accurate copy of the relevant pages from the Conference Report is attached as *Exhibit 2*.

37.     The 2018 Farm Bill required the USDA to issue regulations and guidelines for states to implement the relevant hemp portions of the 2018 Farm Bill as well as regulations and guidelines for states that choose not to regulate the production of hemp in their borders. 7 U.S.C. § 1639r(a)(1)(A).

38.     According to USDA's Final Rule, "produce" is a common agricultural term that means "[t]o grow hemp plants for market, or for cultivation for market, in the United States." 7 C.F.R. § 990.1.

39.     The Final Rule further demonstrates that the 2018 Farm Bill preserves the authority of individual states to regulate the act of producing hemp if they chose to do so (e.g. set back requirements, performance based sampling), but individual states could not alter the definition of hemp. In other words, the 2018 Farm Bill permits states to regulate the production, i.e., cultivation, of hemp, but nothing more.

40.     Significantly, the 2018 Farm Bill prohibits states from blocking the transportation or shipment of hemp and hemp products produced in accordance with the 2018 Farm Bill:

SEC. 10114. INTERSTATE COMMERCE.

(a) Rule of Construction. Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) Transportation of Hemp and Hemp Products. No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

41.     This explicit protection for hemp and hemp products in interstate commerce would be rendered meaningless if individual states were permitted to criminalize certain hemp

and hemp products and frustrate the overarching goal of the 2014 and 2018 Farm Bills, which is to treat hemp and hemp products like a commodity once again.

42.     The overarching goal of treating hemp and hemp products like a commodity is further illustrated by the USDA specifically adding hemp to the Agricultural Technical Advisory Committee ("ATAC") for Trade in Tobacco, Cotton, and Peanuts.[2] There are a total of six (6) ATACs that advise the Secretary of Agriculture and the U.S. Trade Representative about a variety of agricultural trade matters.

43.     Furthermore, General Counsel for the USDA has authored a memorandum discussing the prohibition on states restricting the transportation or shipment of hemp, concluding that any state law purporting to do so has been preempted by Congress. A true and accurate copy of the USDA Memorandum is attached as *Exhibit 3*.

44.     In short, the 2018 Farm Bill (1) broadly defined hemp as including all extracts and derivatives whether growing or not, (2) legalized all hemp products with a Delta-9 THC concentration of not more than 0.3% on a dry weight basis, (3) is silent on the manufacturing processes for hemp products, and (4) mandated that no state or Indian tribe could prohibit the interstate commerce of hemp or hemp products.

45.     On May 2, 2019, in direct response to the 2018 Farm Bill, Governor Eric Holcomb signed into law Senate-Enrolled Act 516 ("SEA 516"), P.L. 190-2019. A copy of SEA 516 is attached as *Exhibit 4*.

46.     SEA 516 expanded the existing definition of "hemp" to mirror the broad definition found in the 2018 Farm Bill: "[T]he plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and

---

[2] *See* https://www.federalregister.gov/documents/2023/06/13/2023-12649/amendment-notice-of-intent-for-agricultural-policy-advisory-committee-apac-and-the-related (last visited August 16, 2023).

salts of isomers, whether growing or not, with a delta-9-tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis, for any part of the Cannabis sativa L. plant." Ind. Code § 15-15-13-6 (effective July 1, 2019).

47.     On January 12, 2023, the Indiana hemp market that had operated smoothly over the last five years was turned on its head when AG Rokita issued the Official Opinion, which is attached as ***Exhibit 5***. In the Official Opinion, AG Rokita opined that hemp derived Delta-8 THC and other hemp derived THC compounds including derivatives and isomers of these compounds are Schedule I controlled substances under Indiana law despite no change in Indiana or federal law.

48.     The Official Opinion reaches this conclusion despite acknowledging that the 2018 Farm Bill "shifted regulatory authority for hemp from the DEA to [USDA]" and that the bill "limits the definition of marijuana to only include cannabis or cannabis-derived material that contains more than 0.3% Delta-9THC on a dry weight basis."

49.     The Official Opinion attempts to create a distinction between "synthetic" hemp derived cannabinoids and cannabinoids "naturally occurring" in the hemp plant without any such distinction found in federal or state statute.

50.     The Official Opinion was directed to and sent to the Superintendent of the Indiana State Police and the Executive Director of the Indiana Prosecuting Attorneys Council, effectively giving them the green light to arrest and prosecute Indiana businesses and citizens for their possession of hemp extracts such as Delta-8.

51.     As a result of the Official Opinion, 3Chi, Wall's Organics, and members of the Midwest Hemp Council are in jeopardy of criminal prosecution for possessing or transporting

Delta-8 THC and similar hemp extracts if law enforcement personnel act on AG Rokita's admonition.

52. As a direct result of the Official Opinion, 3Chi's then Indiana based financial institution notified the company to either stop selling the products or find a different financial institution, which ultimately forced 3Chi to use an out-of-state banking institution.

53. Furthermore, because of the Official Opinion, Midwest Hemp Council members have been refused financing and other banking services in Indiana that are critical to running a business.

54. On June 2, 2023, as a direct result of AG Rokita's Official Opinion, the Wayne County Prosecuting Attorney sent a letter to a Midwest Hemp Council member's small business threatening the store owner to stop selling these products or face legal action from law enforcement. A true and accurate copy of this letter is attached as ***Exhibit 6***.

55. On or about August 4, Detective Sergeant Hassler of the Evansville Police Department entered Wall's Organics' store in Evansville, Indiana. (Declaration of Matt Wall ("Wall Decl."), ¶ 4.) A true and accurate copy of the Wall Decl. is attached as ***Exhibit 7***.

56. Detective Sergeant Hassler informed Wall's Organics that it had to remove all low THC hemp extract products from its shelves, and he provided the owner with a copy of AG Rokita's Official Opinion. (*Id*.)

57. Detective Sergeant Hassler informed Wall's Organics that he would return to the store and that he did not want to see any Delta-8 THC or other low THC extract products on the shelves when he returned, or arrests would be made. (*Id*., ¶ 5.)

58. Wall's Organics' owner attempted to explain to Detective Sergeant Hassler that his products were compliant with the law because they contained less that .3% Delta-9 THC (and

he had the paperwork to prove it), but Detective Sergeant Hassler stated that it did not matter and that such products could no longer be sold in Evansville. (*Id*., ¶ 6.)

59.     It was clear to Wall's Organics that Detective Sergeant Hassler was threatening that if the owner did not remove these products from Wall's Organics' shelves, then he would be arrested when Detective Sergeant Hassler returned to the store. (*Id*., ¶ 7.)

60.     When Wall's Organic's owner asked what he would be arrested for, Detective Sergeant Hassler replied "for marijuana." (*Id*.)

61.     As such, Wall's Organics removed all low THC hemp extract products from its shelves before Detective Sergeant Hassler returned. (*Id*., ¶ 8.)

62.     Wall's Organics' business has experienced a 30% reduction in sales after one day of not offering low THC extract products, and such losses will continue as these products account for approximately 90% of the store's revenue. (*Id*., ¶¶ 9-10.)

63.     At nearly the same time, on or about August 5, 2023, the Huntington Police Department and/or Detective Sergeant Hillman obtained an arrest warrant and raided a business in Huntington, Indiana called Front Row LLC, which sold low THC hemp extracts.

64.     The Huntington Police Department and/or Detective Sergeant Hillman seized Front Row LLC's low THC hemp extract products, claiming that they were controlled substances pursuant to AG Rokita's Official Opinion.

65.     The owners of Front Row LLC have been informed by the Huntington Police Department, Detective Sergeant Hillman, and/or Prosecutor Nix that their possession and sale of these low THC hemp extract products subjects them to a Level 2 felony in Indiana, which carries up to sixteen years in prison.

66.     Sky Vape Shop Inc. is a retailer in Huntington, Indiana that sells low THC hemp extract products.

67.     On August 8, 2023, Detective Sergeant Hillman on behalf of the Huntington Police Department entered Sky Vape Shop's business and informed personnel that they had to remove all of its low THC hemp extract product from its shelves.

68.     Detective Sergeant Hillman, on behalf of the Huntington Police Department, told Sky Vape Shop that he would be back on August 11, and that he did not want to see any Delta-8 THC or other low THC hemp extract products on its shelves when he returned, or arrests would be made.

69.     When the owner of Sky Vape Shop explained to Detective Sergeant Hillman that all of his products were compliant with the law because they contained less than 0.3% Delta-9 THC (and it had the paperwork to prove it), Detective Sergeant Hillman told Sky Vape Shape that it did not matter and that it could no longer sell such products.

70.     To Sky Vape Shop, the threat was clear – either remove all low THC hemp extract products from it shelves, or be arrested on August 11 when Detective Sergeant Hillman returned.

71.     As such, Sky Vape Shop removed all such products from its shelves before Detective Sergeant Hillman returned to the store on August 11.

72.     Removing all low THC hemp extract products is financially devastating for Sky Vape Shop, as those products account for approximately 70% of the store's revenue.  In addition, Sky Vape Shop had just received a shipment of new low THC products that it cannot sell based on the threats from Detective Sergeant Hillman.

73.     Detective Sergeant Hillman on behalf of the Huntington Police Department has sent letters to other business in Huntington, Indiana that sell low THC hemp extract products. These letters specifically cite to AG Rokita's Official Opinion as the authority for the position that low THC hemp extract products are illegal and can no longer be sold by these businesses. A true and accurate copy of one of these letters is attached as ***Exhibit 8***.

### Count I: Declaratory Judgment for Violation of 2018 Farm Bill

74.     Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

75.     An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the lawfulness of low THC hemp extracts.

76.     For example, the Official Opinion has caused lenders to pull out of financing commitments for 3Chi and places 3Chi personnel and other members of the Midwest Hemp Council in jeopardy of criminal prosecution.

77.     Furthermore, the Official Opinion has caused multiple retailers to receive threats from local prosecutors and police departments to either stop selling low THC hemp extracts or face criminal liability.

78.     Indeed, business owners in Huntington, Indiana have been raided, their products seized, and are being threatened with Level 2 felonies that could result in up to 16 years in prison.

79.     Additionally, Sky Vape Shop was coerced by Detective Sergeant Hillman on behalf of the Huntington Police Department to remove low THC hemp extracts from its shelves or its owner would face arrest; all as a direct result of AG Rokita's Official Opinion declaring these products to be illegal.

80.     Additionally, in Evansville, Walls Organics was coerced by Detective Sergeant Hassler on behalf of the Evansville Police Department to remove low THC hemp extracts from its shelves or its owner would face arrest; all as a direct result of AG Rokita's Official Opinion declaring these products to be illegal. (Wall Decl., ¶¶ 4-8.)

81.     Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs request a declaration that the Official Opinion's conclusion that low THC hemp extracts such as Delta-8 are Schedule I controlled substances violates the 2018 Farm Bill and is preempted by federal law.

82.     The 2018 Farm Bill legalized all hemp products with a Delta-9 THC concentration of not more than 0.3% on a dry weight basis and prohibited states from curtailing the transport of hemp or hemp products.

83.     The Official Opinion violates both of these aspects of the 2018 Farm Bill. It attempts to revise federal law to redefine hemp as marijuana and interferes with the free flow of interstate transportation of hemp products.

84.     The Official Opinion imposes an impermissible narrower definition of hemp than mandated by the federal government in the 2018 Farm Bill, despite Congress's pronouncement that states are not permitted to modify the definition of hemp. (Ex. 2 at 738.)

85.     Moreover, by carving certain hemp derived cannabinoids out from the definition of hemp with no statutory changes under Indiana law, the Official Opinion attempts to adopt a definition that conflicts with the federal standard, which includes all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9-tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis (such as Delta-8 THC).

86.     The Official Opinion runs counter to the plain and unambiguous reading of the 2018 Farm Bill as well as its intent as evidenced by a letter from the then Chairman of the House Agriculture Committee Congressman David Scott and the then House Appropriations Subcommittee on Agriculture, Rural Development, Food and Drug Administration, and Related Agencies to the United States Department of Justice and the DEA:

> Congress did not intend the 2018 Farm Bill to criminalize any stage of legal hemp processing, and we are concerned that hemp grown in compliance with a USDA-approved plan could receive undue scrutiny from the DEA as it is being processed into a legal consumer-facing product under this IFR. That is why the 2018 Farm Bill's definition of hemp was broadened from the 2014 Farm Bill's version to include derivatives, extracts and cannabinoids. It was our intent that derivatives, extracts and cannabinoids would be legal if these products were in compliance [with] all other Federal regulations.

A true and accurate copy of Congressmen's Scott and Bishop, Jr.'s letter is attached as ***Exhibit 9***.

87.     The Official Opinion is also in direct conflict with the DEA's own determinations that Delta-8 THC and every other hemp derived cannabinoid product under .3% Delta-9 THC on a dry weight basis is considered hemp and not a controlled substance under federal law.

88.     On June 24, 2021, during a recorded Florida Department of Agriculture and Consumer Services webinar, DEA representative, Sean Mitchell, stated:

> I also just want to expand beyond delta-8. There's delta-8, there's delta-10, there's all kind of different uh cannabinoids that uh are associated with cannabis sativa l that are kind of out there and making the rounds. So what I want to say, and I'll be very, very deliberate and clear. At this time, I repeat again, at this time, per the Farm Bill, the only thing uh that is a controlled substance is delta-9 THC greater than 0.3% based on a dry weight basis.[3]

89.     On August 19, 2021, the Alabama Board of Pharmacy requested the control status of Delta-8 THC under the Controlled Substances Act. On September 15, 2021, the DEA concluded that "…cannabinoids extracted from the cannabis plant that have a Δ 9 -THC

---

[3] *See* https://tinyurl.com/mr2n28hx at 9:00 minute mark (last visited August 16, 2023).

concentration of not more than 0.3 percent on a dry weight basis meet the definition of 'hemp' and thus are not controlled under the CSA." Furthermore, according to the response, the DEA considers unlawful "synthetic" THC products to be those that are "produced from non-cannabis materials." A true and accurate copy of the DEA's response to the Alabama Board of Pharmacy is attached as *Exhibit 10*.

90. Furthermore, DEA's official promulgations in the Federal Register, at 21 C.F.R. § 1308.11(31)(ii), declares that: "(ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o."

91. In addition, by criminalizing hemp derivatives like Delta-8 THC, the Official Opinion prohibits the transport of hemp products in and through Indiana in direct contradiction of Section 10114 of the 2018 Farm Bill and the Commerce Clause. U.S. Const. art. I, § 8, cl. 3.

92. Federal law preempts the Official Opinion that is in conflict with the 2018 Farm Bill pursuant to the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

93. Plaintiffs have been, and will be, harmed by the Official Opinion, as they are unable to transport, manufacture, possess, or sell low THC hemp products that have been declared to be legal under federal law, and they face threats of prosecution for engaging in the same.

## Count II – Declaratory Judgment for Violation of SEA 52

94. Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

95.     Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs also request a declaration that the Official Opinion's conclusion that low THC hemp extracts are Schedule I controlled substances violates SEA 52.

96.     On April 26, 2017, Governor Holcomb signed into law House-Enrolled Act 1148 ("HEA 1148"), which became effective on the day of the Governor's signature.

97.     HEA 1148 provided Hoosiers battling seizures access to hemp extract products containing at least 5 percent cannabidiol ("CBD") and less than .3% total tetrahydrocannabinol. However, strong consumer demand led to the products being sold all over the state, which resulted in enforcement actions against unauthorized retailers.

98.     As a result of the confusion and frustration from the general public and law enforcement, Governor Holcomb declared a "timeout" on enforcement actions to give the Indiana General Assembly time to clarify the law during the upcoming legislative session.

99.     During the next legislative session, the Indiana General Assembly passed SEA 52, which Governor Holcomb signed into law on March 21, 2018 and became effective on the day of the Governor's signature. A copy of SEA 52 is attached as **Exhibit 11**.

100.     SEA 52 repealed the restrictive program created in HEA 1148 in favor of providing Hoosiers with broad market access to low THC hemp extract products that meet certain quality control standards like labeling and testing and contain less than .3% Delta-9 THC (including precursors) on a dry weight basis.

101.     SEA 52 also permanently excluded low THC hemp extracts from Indiana's definition of marijuana, hashish, hashish oil, a controlled substance, a controlled substance analogue.

102. The Official Opinion acknowledges SEA 52 but modifies the statute in a manner to make it appear as if "hemp" is not included in the definition of a "low THC hemp extract:"

> "Low THC hemp extract" means a substance or compound that: (1) is derived from or contains any part of the plant Cannabis sativa L. that meets the definition of hemp under IC 15-15-13-6; (2) contains not more than three-tenths percent (0.3%) total delta-9- tetrahydrocannabinol (THC), including precursors, by weight; and (3) contains no other controlled substances. *(b) The term does not include…hemp* (emphasis added).

(Ex. 9 at 9.)

103. However, the unambiguous plain reading of SEA 52 in full clearly demonstrates that all low THC hemp extracts are legal under Indiana law so long as it contains no more than .3% Delta-9 THC on a dry weight basis. Like the 2018 Farm Bill, SEA 52 is agnostic on manufacturing processes.

104. Because of this deliberate market expansion by the Indiana General Assembly, the state and local governments executed incentive agreements with 3Chi and other small businesses to relocate and expand their business operations in the state.

105. In short, SEA 52 expanded market access for all Hoosier consumers and small businesses to all hemp products with a Delta-9 THC concentration of not more than 0.3% on a dry weight basis.

106. Plaintiffs have been, and will be, harmed by the Official Opinion's violation of SEA 52.

### Count III – Injunctive Relief

107. Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

108. Plaintiffs are likely to succeed on the merits of their challenge to the Official Opinion given that it openly conflicts with the 2018 Farm Bill and SEA 52.

109.	The Official Opinion has, and will continue to, cause harm to Plaintiffs by placing them in jeopardy of criminal prosecution, depriving them of financing due to fear by lenders of criminal prosecution, and precluding them from selling products deemed legal by federal and state law.  Indeed, the recent actions taken by the Evansville Police Department and Huntington Police Department—as a direct result of the Official Opinion—demonstrate the very real risk to Plaintiffs of having products seized and / or facing arrest.

110.	Plaintiffs have no adequate remedy at law and face irreparable harm unless this Court enjoins the Official Opinion.

111.	The balance of harms weighs in favor of Plaintiffs, as the injunction will not harm Defendants; it will simply place Defendants back into compliance with state and federal law.

112.	An injunction is in the public's interests, as Defendants are not permitted to ignore federal law or criminalize conduct that has been declared legal under federal law.

113.	Plaintiffs are entitled to a preliminary injunction, later to be made permanent, with respect to the Official Opinion.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a) Enter judgment in their favor and against Defendants;

(b) Declare all low THC hemp extracts as legal products under state and federal law; and

(c) Issue a preliminary injunction, later to be made permanent, enjoining Defendants (including other persons in concert or participation with them, including but not limited to law enforcement personnel and prosecutors' offices, including the Indiana State Police and Indiana Prosecuting Attorneys Council) from taking any steps to criminalize or prosecute the sale, possession, manufacture, financing, or distribution of low THC hemp extracts that are not more than .3% Delta-9 THC on a dry weight basis;

(d) Award Plaintiffs their costs and attorneys' fees incurred in bringing this action; and

(e) Award Plaintiffs all other just and proper relief.

Dated: August 16, 2023

Respectfully submitted,

*/s/ Paul D. Vink*
Paul D. Vink (Atty. No. 23785-32)
Justin E. Swanson (Atty. No. 30880-02)
Tyler J. Moorhead (Atty. No. 34705-73)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000
317-684-5173 fax
pvink@boselaw.com
jswanson@boselaw.com
tmoorhead@boselaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 16, 2023 a copy of the foregoing was filed electronically. A copy of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.

Thomas Fisher
Melinda Rebecca Holmes
James A. Barta
Office of the Attorney General
tom.fisher@atg.in.gov
melinda.holmes@atg.in.gov
james.barta@atg.in.gov

*Attorneys for Defendants*

*/s/ Paul D. Vink*
Paul D. Vink

4621647