UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| 3C, LLC d/b/a 3Chi, MIDWEST HEMP COUNCIL, INC., and WALL'S ORGANICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATTORNEY GENERAL TODD ROKITA, in his official capacity, HUNTINGTON POLICE DEPARTMENT, DETECTIVE SERGEANT DARIUS HILLMAN, in his official capacity, HUNTINGTON COUNTY PROSECUTOR, JEREMY NIX, in his official capacity, EVANSVILLE POLICE DEPARTMENT, DETECTIVE SERGEANT NATHAN HASSLER, in his official capacity, and VANDERBURGH COUNTY PROSECUTOR DIANA MOERS, in her official capacity, <br><br> Defendants. | No. 1:23-cv-01115-JRS-MKK |

**Order on Amended Motion for Preliminary Injunction (ECF No. 32)**

This is a case about federal preemption. 3C, LLC d/b/a 3Chi ("3Chi"), Midwest Hemp Council, and Wall's Organics (collectively, "Plaintiffs") sued Indiana Attorney General Todd Rokita, the Huntington Police Department ("HPD"), Detective Sergeant Darius Hillman ("Sergeant Hillman"), Huntington County Prosecutor Jeremy Nix, the Evansville Police Department ("EPD"), Detective Sergeant Nathan Hassler ("Sergeant Hassler"), and Vanderburgh County Prosecutor Diana Moers (collectively, "Defendants"). Plaintiffs challenge an Official Opinion issued by the

Indiana Attorney General in January 2023 regarding whether certain variants of tetrahydrocannabinol ("THC") are considered controlled substances and seek, among other relief, a preliminary injunction.

The Court finds that Plaintiffs have not established that they will suffer irreparable harm in the absence of an injunction. Therefore, Plaintiffs' Amended Motion for Preliminary Injunction, (ECF No. 32), is **denied**, and Plaintiffs' first Motion for Preliminary Injunction, (ECF No. 5), is **denied as moot**.

### I.  Background

*A. Legal landscape*

Marijuana is a controlled substance; hemp is not. The Agriculture Improvement Act of 2018 ("2018 Farm Bill"), signed into law by President Donald Trump, expanded the definition of "hemp" to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). These substances with not more than 0.3% concentration are also known as low THC hemp extracts. Indiana followed Congress's lead: in 2019, such that Senate-Enrolled Act 516 ("SEA 516"), signed into law by Governor Eric Holcomb, adopted the 2018 Farm Bill definition of hemp. Ind. Code § 15-15-13-6.

On January 12, 2023, Indiana Attorney General Todd Rokita issued Official Opinion 2023-1 (the "Official Opinion") in response to the question of whether certain THC variants are considered Schedule I controlled substances under Indiana law. The Attorney General wrote that the pertinent THC variants were "synthetic

derivatives," which are Schedule I substances.  (Official Opinion 1–2, ECF No. 31-5.) Delta-8 THC, the primary form of THC at issue in this case, is naturally present in the cannabis plant, but only in very small quantities, so to produce enough delta-8 for commercial sale, it must be synthesized artificially by converting other cannabinoids naturally found in hemp into delta-8.  Schedule I controlled substances under Indiana law include "synthetic equivalents" of THCs.  Ind. Code § 35-48-2-4(d)(31).  Hemp, hemp products, and low THC hemp extracts are not specifically listed as scheduled drugs under state law.  The Attorney General's position in the Official Opinion is that "delta-8 THC does not appear to fall into any" exception for hemp or low THC hemp extracts, since it is a synthetic derivative of THC.  (Official Opinion 11, ECF No. 31-5.)  Therefore, it is a Schedule I controlled substance that is illegal under Indiana law.  The Official Opinion further stated that the Indiana Attorney General "cannot opine on the charging or prosecution of individual cases and defers to the prosecuting attorneys and law enforcement officers for those decisions." (*Id.* at 2.)

### B. *Plaintiffs' Complaint*

Plaintiffs are various stakeholders in the hemp industry.  3Chi is a manufacturer and distributor of low THC hemp extract products.  Midwest Hemp Council is a trade organization for farmers, manufacturers, retailers, and consumers of low THC hemp extract products.  Wall's Organics is a hemp retailer located in Evansville, Indiana.  Plaintiffs are suing under 42 U.S.C. § 1983, alleging that the Official Opinion has resulted in a deprivation of their rights due to its conflict with federal and state law.

3

Specifically, Plaintiffs allege the following. 3Chi and members of Midwest Hemp Council have lost financial and banking services because the Official Opinion has put the legal status of their products into doubt. (Am. Compl. ¶¶ 52–53, ECF No. 31.) 3Chi's bank "notified the company to either stop selling the products or find a different financial institution," ultimately forcing 3Chi to find another bank. (Id. ¶ 52.) One member of Midwest Hemp Council received a letter from the Wayne County Prosecuting attorney "threatening the store owner to stop selling [delta-8] products or face legal action." (Id. ¶ 54.) Defendant Sergeant Hassler entered Plaintiff Wall's Organics' store and "informed Wall's Organics that it had to remove all low THC hemp extract products from its shelves, and he provided the owner with a copy of" the Official Opinion. (Id. ¶ 56.) Sergeant Hassler said "he would return to the store and that he did not want to see any Delta-8 THC or other low THC extract products on the shelves when he returned, or arrests would be made," also saying it did not matter that the products contained less than 0.3% delta-9 THC. (Id. ¶¶ 57–58.) Plaintiffs contend that the Official Opinion has harmed them "by placing them in jeopardy of criminal prosecution, depriving them of financing due to fear by lenders of criminal prosecution, and precluding them from selling products deemed legal by federal and state law." (Id. ¶ 109.) Defendants argue, in various combinations, that (1) they are not the correct defendant; (2) Plaintiffs do not have standing to bring a claim against them; and/or (3) sovereign immunity prevents Plaintiffs from bringing their claims.

## II. Legal Standard

To obtain a preliminary injunction, a plaintiff must first show (1) that they have "some" likelihood of success on the merits; (2) that traditional legal remedies are inadequate; and (3) that they will suffer irreparable harm without preliminary relief. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). To establish a likelihood of success on the merits, a plaintiff must demonstrate that their "claim has some likelihood of success on the merits, not merely a better than negligible chance." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (internal quotation marks omitted) (citing *Eli Lilly and Co. v. Arla Foods, Inc.*, 983 F.3d 375, 381 (7th Cir. 2018)).

If the plaintiff proves these three elements, "the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one" and consider "any effects on non-parties" to determine whether a preliminary injunction would be in the public interest. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Under the Seventh Circuit's "sliding scale" approach, "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). In weighing the harms, the court must "bear[] in mind that the purpose of a preliminary injunction is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.'" *AM General Corp. v. DaimlerChrysler Corp*, 311 F.3d 796, 804 (7th Cir. 2002) (quoting *Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998)).

### III.   Analysis

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must show a "clear need" for this "extraordinary equitable remedy." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). An essential part of this "clear need" is the showing of irreparable harm. Plaintiffs have not shown irreparable harm, and therefore, their request for a preliminary injunction must fail.

"Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). A preliminary injunction is appropriate only if the plaintiff is "likely" to suffer "harm that cannot be prevented or fully rectified by the final judgment after trial." *Id.*; *Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."). In *Roland Machinery*, the Seventh Circuit enumerated four scenarios in which damages may be inadequate: (1) where the plaintiff will have to shut down their business; (2) where the plaintiff cannot finance litigation without revenues that the defendant's actions have threatened to destroy; (3) where the defendant is or will become insolvent and cannot pay damages at the time final judgment is entered; and (4)

where the "nature of the plaintiff's loss may make damages very difficult to calculate." *Id.* Plaintiffs focus on the fourth scenario.

Plaintiffs argue that (1) legal remedies are inadequate to remedy their alleged harms because it will be difficult or impossible to properly quantify their losses as would be required for a damages remedy and (2) "potential criminal sanctions constitute irreparable harm." (Pls.' Br. 17, ECF No. 33.) Plaintiffs allege irreparable harm to their business interests, which is difficult to quantify because of the hemp market's volatility and because "[i]t is impossible for Plaintiffs to make assumptions as to the amount of their losses, especially given the long-term loss of goodwill and customer confidence" caused by the Official Opinion. (Pls.' Reply 25, ECF No. 87.) Specifically, Plaintiffs allege that "the loss of bank financing and inability to transport hemp results in unknowable financial harm that threatens the viability" of their business and others like it, which is difficult to quantify and remedy with damages. (Pls.' Mem. 18, ECF No. 33.) However, they do not point to any evidence to support this contention that the losses are unknowable. For example, Wall's Organics claims to have experienced a 30% reduction in sales the day after it removed low THC hemp extract products from the store at the direction of Sergeant Nathan Hassler. (Wall Decl. ¶ 9.) Recording sales data is an ordinary part of business accounting; Plaintiffs should well be able to calculate losses from any (as-yet-unrealized) harms by ordinary analytical means—comparing pre- and post-harm sales, to give the simplest example. Similarly, any difference in doing business with a different bank, as is the case here, should be quantifiable.

7

Attorney General Rokita argues that Plaintiffs have not demonstrated irreparable harm because they found another banking institution, citing the testimony of 3Chi's owner, Justin Journay. (Defs.' Mem. 29, ECF No. 82. (citing Journay Dep. 55).) Journay stated that although 3Chi had "found a partner in Indiana willing to explore" a relationship, it did not have the full range of banking services it needed to operate at its usual level. (Journay Dep. 55, ECF No. 27-2.) Because of this, 3Chi will have to "operate at a level that [it] know[s] is going to hurt [the] business financially." (Id. at 73.) Although a potential new partnership with some basic services is not the same as an established full-service banking relationship, this is not the type of harm that is appropriately remedied by a preliminary injunction because the resulting loss in sales can be remedied with damages.

Plaintiffs cite *Abbott Laboratories v. Mead Johnson & Company*, 971 F.2d 6 (7th Cir. 1992) for the proposition that "[i]t is impossible for Plaintiffs to make assumptions as to the amount of their losses, especially given the long-term loss of goodwill and customer confidence." (Pls.' Reply 25, ECF No. 87.) "[L]oss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). Claims of loss of goodwill typically arise in cases dealing with intellectual property, contract disputes, or unfair competition. *See, e.g.*, *Abbott Lab'ys*, 971 F.2d 6 (trademark infringement); *Life Spine*, 8 F.4th 531 (trade secrets); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) (false advertising); *Stuller, Inc. v. Steak N Shake Enterps., Inc.*, 695 F.3d 676 (7th Cir. 2012) (franchise contract dispute). None of these situations applies here, and Plaintiffs

8

have not directed the Court to any evidence showing the loss of goodwill or damage to reputation that they allege. Also, they have not shown that their competitors, subject to the same restrictions, would somehow fare better or capture any goodwill from Plaintiffs. In any event, without proof of any loss, this does not rise to the level of irreparable harm.

Plaintiffs also argue that the threat of arrest and potential criminal sanctions create irreparable harm. In general, the threat of criminal sanctions translates to irreparable harm only in the First Amendment context. *See O'Brien v. Town of Caledonia*, 748 F.2d 403, 409 (7th Cir. 1984). Plaintiffs cite *Jackson v. City of Markham, Illinois*, 773 F. Supp. 105 (N.D. Ill. 1991) for the proposition that threat of prosecution is sufficient to establish irreparable harm. (Pls.' Br. 19, ECF No. 33.) However, *Jackson* also involved First Amendment rights; the court there found that the plaintiff had suffered irreparable harm because her "exercise of First Amendment rights has been chilled by the threat of future arrests." 773 F. Supp. at 109. Plaintiffs provided no controlling support for this claim. Outside of the First Amendment context, a preliminary injunction is not appropriate for mere threats of sanctions. False arrest and malicious prosecution are well-recognized claims compensable through damages under 42 U.S.C. § 1983. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986); *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Furthermore, Plaintiffs allege that the Official Opinion will bring immediate harms to their business. But there is no evidence tending to show that prosecution is imminent; the case has now been pending for over six months without any action

9

from the State; and even if the State were to begin a prosecution, the harms would not be consummated until several months or even years later.

### IV. Conclusion

The Court finds that Plaintiffs have not established irreparable harm and therefore are not entitled to a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction, (ECF Nos. 5, 32), are **denied**.

Having found that the preliminary injunction should be denied, the Court reserves ruling on jurisdictional issues for the resolution of the pending Motions to Dismiss, (ECF Nos. 67, 81), and Motion for Judgment on the Pleadings, (ECF No. 65).

**SO ORDERED.**

Date: 03/29/2024

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution to all registered counsel by CM/ECF