UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| 3C, LLC d/b/a 3Chi, MIDWEST HEMP COUNCIL, INC., and WALL'S ORGANICS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:23-cv-01115-JRS-MKK |
| ATTORNEY GENERAL TODD ROKITA, in his official capacity, HUNTINGTON POLICE DEPARTMENT, DETECTIVE SERGEANT DARIUS HILLMAN, in his official capacity, HUNTINGTON COUNTY PROSECUTOR, JEREMY NIX, in his official capacity, EVANSVILLE POLICE DEPARTMENT, DETECTIVE SERGEANT NATHAN HASSLER, in his official capacity, and VANDERBURGH COUNTY PROSECUTOR DIANA MOERS, in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**Order on Motion for Judgment on the Pleadings (ECF No. 65) and Motions to Dismiss (ECF Nos. 67, 81)**

This is a case about federal preemption.  3C, LLC d/b/a 3Chi ("3Chi"), Midwest Hemp Council, and Wall's Organics (collectively, "Plaintiffs") sued Indiana Attorney General Todd Rokita, the Huntington Police Department ("HPD"), Detective Sergeant Darius Hillman ("Sergeant Hillman"), Huntington County Prosecutor Jeremy Nix, the Evansville Police Department ("EPD"), Detective Sergeant Nathan Hassler ("Sergeant Hassler"), and Vanderburgh County Prosecutor Diana Moers (collectively, "Defendants").  Plaintiffs challenge an Official Opinion issued by the

Indiana Attorney General in January 2023 regarding whether certain variants of tetrahydrocannabinol ("THC") are considered controlled substances. Various Defendants have filed pleadings moving to dismiss the case, which the Court will now address.

First, EPD moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 65.) This motion is **granted**.

Second, HPD and Detective Sergeant Hillman moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 67.) This motion is **granted**.

Finally, Attorney General Rokita, Huntington County Prosecutor Nix, and Vanderburgh County Prosecutor Moers (the latter two collectively referred to as "the County Prosecutors") moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 81.) This motion is **granted** as to Plaintiffs' federal claims against the County Prosecutors and Plaintiffs' state-law claims against all three Defendants and **denied** as to Plaintiffs' federal claims against Attorney General Rokita.

## I.   Background

### A. *Legal landscape*

Marijuana is a controlled substance; hemp is not. The Agriculture Improvement Act of 2018 ("2018 Farm Bill"), signed into law by President Donald Trump, expanded the definition of "hemp" to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Therefore, as long as the concentration of delta-9 is less

than or equal to 0.3% on a dry weight basis, the substance is hemp; if it is more than 0.3%, the substance is marijuana.  These substances with not more than 0.3% concentration are also known as low THC hemp extracts.  Indiana followed Congress's lead: in 2019, such that Senate-Enrolled Act 516 ("SEA 516"), signed into law by Governor Eric Holcomb, adopted the 2018 Farm Bill definition of hemp.  This has the effect of exempting low THC hemp extracts from the definition of marijuana and other THCs, which are Schedule I controlled substances under both Indiana and federal law.  Ind. Code § 35-48-2-4(d)(22), (32); 21 U.S.C. § 812(c)(c)(10), (17).

On January 12, 2023, Indiana Attorney General Todd Rokita issued Official Opinion 2023-1 (the "Official Opinion") in response to the question of whether certain THC variants are considered Schedule I controlled substances under Indiana law. The Attorney General wrote that the pertinent THC variants were "synthetic derivatives," which are Schedule I substances.  (Official Opinion 1–2, ECF No. 31-5.) Delta-8 THC, the primary form of THC at issue in this case, is naturally present in the cannabis plant, but only in very small quantities, so to produce enough delta-8 for commercial sale, it must be synthesized artificially by converting other cannabinoids naturally found in hemp into delta-8.[1]  Schedule I controlled substances under Indiana law include "synthetic equivalents" of THCs.  Ind. Code § 35-48-2-4(d)(31).  Hemp, hemp products, and low THC hemp extracts are not specifically listed as scheduled drugs under state law.  The Attorney General's position in the Official Opinion is that "delta-8 THC does not appear to fall into any" exception for

---

[1] https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc.

hemp or low THC hemp extracts, since it is a synthetic derivative of THC.  (Official

Opinion 11, ECF No. 31-5.)  Therefore, as a "synthetic equivalent" of THC, it is a

Schedule I controlled substance that is illegal under Indiana law.

### B. Plaintiffs' Complaint

Plaintiffs are various stakeholders in the hemp industry.  3Chi is a manufacturer

and distributor of low THC hemp extract products.  Midwest Hemp Council is a trade

organization for farmers, manufacturers, retailers, and consumers of low THC hemp

extract products.  Wall's Organics is a hemp retailer located in Evansville, Indiana.

Plaintiffs are suing under 42 U.S.C. § 1983, alleging that the Official Opinion has

resulted in a deprivation of their rights due to its conflict with federal and state law.

Specifically, Plaintiffs allege the following.  3Chi and members of Midwest Hemp

Council have lost financial and banking services because the Official Opinion has put

the legal status of their products into doubt.  (Am. Compl. ¶¶ 52–53, ECF No. 31.)

3Chi's bank "notified the company to either stop selling the products or find a

different financial institution," ultimately forcing 3Chi to find another bank.  (*Id.*

¶ 52.)  One member of Midwest Hemp Council received a letter from the Wayne

County Prosecuting attorney "threatening the store owner to stop selling [delta-8]

products or face legal action."  (*Id.* ¶ 54.)  Defendant Sergeant Hassler entered

Plaintiff Wall's Organics' store and "informed Wall's Organics that it had to remove

all low THC hemp extract products from its shelves, and he provided the owner with

a copy of" the Official Opinion.  (*Id.* ¶ 56.)  Sergeant Hassler said "he would return to

the store and that he did not want to see any Delta-8 THC or other low THC extract

products on the shelves when he returned, or arrests would be made," also saying it did not matter that the products contained less than 0.3% delta-9 THC.  (*Id.* ¶¶ 57–58.)  Putting aside whether an Official Opinion carries the weight of law, Plaintiffs contend that the Official Opinion has harmed them "by placing them in jeopardy of criminal prosecution, depriving them of financing due to fear by lenders of criminal prosecution, and precluding them from selling products deemed legal by federal and state law."  (*Id.* ¶ 109.)  Defendants argue, in various combinations, that (1) they are not the correct defendant; (2) Plaintiffs do not have standing to bring a claim against them; and/or (3) sovereign immunity prevents Plaintiffs from bringing their claims.

## II.    Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is "governed by the same standards" as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the factual allegations must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  This includes suing the correct defendant.  *See Blanchard & Assocs. v. Lupin Pharmas., Inc.*, 900 F.3d 917, 920–21 (7th Cir. 2018).

A Rule 12(b)(1) motion "tests the jurisdictional sufficiency of the complaint," including whether the plaintiffs have standing.  *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).  There are three requirements of Article III standing.  A plaintiff must show that they have (1) suffered an injury in fact (2)

that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed

by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants here do not attack

the factual allegations made by Plaintiffs as untrue, instead arguing that Plaintiffs

do not have standing due to traceability and redressability defects.

### III.    Discussion

There are several arguments that must be addressed to dispose with Defendants'

motions.    The Court will first address whether Plaintiffs can sue the police

department defendants, EPD and HPD.  Then, the Court will turn to the standing

arguments presented by Sergeant Hillman, the County Prosecutors, and Attorney

General Rokita.  The Court will focus primarily on whether Plaintiff Midwest Hemp

Council has standing.  Finally, the Court will address whether sovereign immunity

bars this suit.

### A. *Police department defendants*

EPD and HPD assert that Plaintiffs' claims against them must be dismissed

because police departments are not suable entities under Seventh Circuit law.

(EPD's Br. 2, ECF No. 66; HPD's Br. 6, ECF No. 68.)  Plaintiffs do not dispute this.

(Pls.' Resp. to EPD's Mot. J. Pleadings 4, ECF No. 75; Pls.' Resp. to HPD's Mot.

Dismiss 1–2, ECF No. 84.)  The Parties are correct.  In *Sow v. Fortville Police Dep't*,

636 F.3d 293 (7th Cir. 2011), the Seventh Circuit held that Indiana law did not permit

local police departments to be sued under § 1983.  *Id.* at 300.  EPD and HPD are not

suable entities, and the claims against them are dismissed with prejudice.

## B. *Standing*

Sergeant Hillman, Attorney General Rokita, and the County Prosecutors argue that Plaintiffs do not have standing to bring any of their claims. (Hillman's Br. 3–6, ECF No. 68; Defs.' Resp. 13–19, ECF No. 82.) The Court will first address Plaintiff Midwest Hemp Council's ability to bring suit on its own and as an organizational plaintiff; then all Plaintiffs' ability to bring a pre-enforcement challenge against the County Prosecutors and Sergeant Hillman; and then all Plaintiffs' standing to sue Attorney General Rokita.

### 1. Midwest Hemp Council's standing

Sergeant Hillman seeks to dismiss the claims against him because Plaintiffs have not alleged an injury that is traceable to or redressable by him. (Hillman's Br. 3–6, ECF No. 68.) Although Plaintiffs did allege that Sergeant Hillman took action threatening certain businesses in Huntington, (Am. Compl. ¶¶ 63–71, ECF No. 31), Plaintiffs do not appear to bear any connection to these businesses. Plaintiffs argue that Midwest Hemp Council can pursue its claims against Sergeant Hillman because its "mission and purpose are being thwarted by Sergeant Hillman's actions, and he is causing Midwest Hemp Council to deplete its limited resources in an attempt to combat his improper threats, seizures, and arrests." (Pls.' Resp. 2, ECF No. 84.) Midwest Hemp Council contends that Sergeant Hillman's actions have created a "culture of confusion," preventing it from engaging in its typical advocacy activities and "forc[ing]" it to "hire legal counsel to assist in clarifying the legality of low THC hemp extract products, spend man hours to organize a fundraiser for these

7

unbudgeted expenses, and spend time and resources in issuing updated guidance" to its members in light of Sergeant Hillman's actions. (*Id.* at 4–5.)

However, Midwest Hemp Council brings these allegations for the first time in its response to Hillman's motion to dismiss and has not sought to amend the complaint. "[A] suit fails for lack of standing unless the *complaint* plausibly alleges concrete injury caused by the asserted wrong." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 978 (7th Cir. 2023) (emphasis added) (citing *Department of Educ. v. Brown*, 600 U.S. 551 (2023)). Relatedly, Midwest Hemp Council does not make allegations on its own behalf against Attorney General Rokita. Nowhere in the Amended Complaint do Plaintiffs allege that Midwest Hemp Council has been prevented from engaging in its typical advocacy or forced to divert its resources away from its core mission. Therefore, Midwest Hemp Council does not have standing in its own right to bring claims against any of the Defendants.

### 2. Midwest Hemp Council's associational standing

Midwest Hemp Council next argues that it has associational standing on behalf of its members. (Pls.' Resp. 6, ECF No. 84.) To have associational standing, an organization "must show that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (internal quotation marks omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432

U.S. 333, 343 (1977)).  "'[N]aming the affected members' is a requirement for associational standing." *Id.* at 1009 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).  Plaintiffs allege that Midwest Hemp Council's "members" suffered injuries but stop short of naming specific individuals or companies.  (*See* Am. Compl. ¶¶ 16, 51, 53, ECF No. 31.)  This is not enough to confer associational standing on Midwest Hemp Council; it must "*identify* members who have suffered the requisite harm." *Prairie Rivers Network*, 2 F.4th at 1009 (emphasis added) (quoting *Summers*, 555 U.S. at 499).

Midwest Hemp Council's claim of associational standing rests primarily on Sergeant Hillman's interactions with CravinVapes, a cannabis retail establishment in Huntington.  (*See* Pls.' Resp. 6–7, ECF No. 84.)  In the Amended Complaint, Plaintiffs included a letter from Sergeant Hillman to CravinVapes.  (ECF No. 31-8.)  However, they did not allege that CravinVapes is a member of Midwest Hemp Council, which Sergeant Hillman pointed out in his Reply.  (*See* Defs.' Reply 3, ECF No. 95.)  In response, Plaintiffs moved for leave to file a surreply, (ECF No. 96), which this Court granted, (ECF No. 97), accepting Plaintiffs' Surreply, (ECF No. 96-1).  In their Surreply, Plaintiffs acknowledged that at the time of the Amended Complaint, "CravinVapes was not a member of" Midwest Hemp Council, but that it became a member by the time Plaintiffs responded to the Huntington Defendants' motion to dismiss.  (Pls.' Surreply 2, ECF No. 96-1.)

"Standing is evaluated at the time suit is filed." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013).  A

"plaintiff must establish standing at the time the suit is filed and cannot manufacture standing afterwards." *Pollack v. U.S. Dep't of Just.*, 577 F.3d 736, 742 n.2 (7th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).  Plaintiffs have acknowledged that CravinVapes was not a member of Midwest Hemp Council when the suit was filed.  Therefore, Midwest Hemp Council cannot assert associational standing on behalf of CravinVapes.

Although Midwest Hemp Council cannot assert standing on behalf of CravinVapes, it can proceed on any viable claims as an organizational plaintiff on behalf of Low Bob's Tobacco.  Plaintiffs allege that Low Bob's Tobacco was sent a letter from the Wayne County Prosecuting Attorney "threatening the store owner to stop selling [delta-8] products or face legal action," which was "a direct result" of the Official Opinion.  (Am. Compl. ¶ 54, ECF No. 31; Am. Compl. Ex. 6, ECF No. 31-6.)

The interest Midwest Hemp Council is seeking to protect on behalf of its members such as Low Bob's Tobacco are germane to Midwest Hemp Council's purpose: "providing information and advocacy for the whole hemp plant industry in Indiana and surrounding states on behalf of its members."  (Am. Compl. ¶ 15, ECF No. 31.) Midwest Hemp Council seeks to protect its members' interest in clear information regarding what a member can and cannot legally sell.  Finally, neither Midwest Hemp Council's claim nor the relief requested requires the addition of its individual members as parties.  Enjoining the Official Opinion does not require specific plaintiffs.

Therefore, Midwest Hemp Council does have associational standing to bring claims against the suable Defendants.

> 3. Pre-enforcement standing

With respect to the County Prosecutors and Sergeant Hillman, this is a pre-enforcement challenge, meaning these Defendants have not, at this time, arrested, prosecuted, or otherwise subjected Plaintiffs to legal action under the Indiana statute as interpreted by the Official Opinion. However, Plaintiffs may still satisfy Article III's injury-in-fact requirement if there is a threat of arrest, prosecution, or other administrative action that "give[s] rise to harm sufficient to justify pre-enforcement review" of the constitutionality of a government action. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014). To establish Article III standing, Plaintiffs "must show 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'" *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). But, Plaintiffs have not alleged that their business activities are "arguably affected with a constitutional interest," and operating a retail business does not fit within the limited contexts in which pre-enforcement challenges are permitted. *See Susan B. Anthony List*, 573 U.S. at 159–60 (noting that "circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III" include challenges to government action prohibiting handbilling, advertising, book displays, and other activities implicating the First

Amendment).  Therefore, Plaintiffs do not have standing to bring their claims against

Sergeant Hillman or the County Prosecutors.

      4.  Attorney General Rokita

Attorney General Rokita argues that Plaintiffs do not have standing to sue him

because a favorable ruling would be "an impermissible advisory opinion" and would

not provide any redress because the Official Opinion is not binding law.  (Defs.' Resp.

13, 15–17, ECF No. 82.)    Article III limits the judicial power to "cases or

controversies," and this Court cannot issue an advisory opinion "that do[es] not affect

the rights of the parties before" it.  *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181

(7th Cir. 2020) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  He argues that

because the Attorney General does not prosecute or make decisions for financial

institutions about whom to work with, there is nothing this Court could order him to

do that would remedy Plaintiffs' alleged injuries.  (*Id.* at 16.)

This argument both ignores the fact that Attorney General Rokita is the source of

the Official Opinion and understates the impact of the state's top law enforcement

official on the decisions of local prosecutors and police.  A favorable decision against

the Attorney General would redress Plaintiffs' injuries because without the Official

Opinion, there would no longer be a reason for local law enforcement to target them

nor for private parties who were otherwise willing to work with them to pull their

partnership.  Plaintiffs have shown that their rights and obligations are impacted by

the now-murky legal status of their products.  A decision from this Court regarding

whether the Official Opinion is a proper interpretation of Indiana law or whether it

carries the force of law, which is not a proper determination at this stage, will determine whether Plaintiffs and their affiliates are operating legally; a favorable decision may permit them to resume operations without fear of prosecution or withdrawal of financial support based on the Official Opinion. This is a justiciable case or controversy, and there is standing to proceed against Attorney General Rokita

### C. Sovereign immunity

Attorney General Rokita also argues that Plaintiffs' claims are barred by sovereign immunity. He argues that (1) state law claims are barred by sovereign immunity and (2) federal law claims are barred because he does not enforce Indiana's criminal laws and therefore the *Ex parte Young* exception to sovereign immunity does not apply. (Defs.' Resp. 19–21, ECF No. 82.) He is correct on point (1). Plaintiffs cannot bring suit in a federal court to compel a state official to conform to state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Therefore, Plaintiffs' claims under Indiana law—Count II and Count III insofar as they request relief for a conflict with SEA 52—must be dismissed.

But Plaintiffs can proceed on their federal claims brought under 42 U.S.C. § 1983 for violations of the federal Constitution. The *Ex parte Young* doctrine allows a plaintiff to seek a prospective injunction to prevent a state official from enforcing an unconstitutional state law or from engaging in some other unconstitutional action. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974). State officials can be sued if they

have "some connection with the enforcement" of the allegedly unconstitutional law. *Ex parte Young*, 209 U.S. 123, 157 (1908).  Attorney General Rokita argues that he is not a proper defendant because he does not enforce Indiana's criminal laws.  The Indiana Attorney General "has the broad authority to assist in the prosecution of any offense if he decides that it is in the public interest." *Baskin v. Brogan*, 12 F. Supp. 3d 1144, 1152 (S.D. Ind. 2014), *aff'd*, 766 F.3d 648 (7th Cir. 2014).  However, he "cannot initiate prosecutions; instead, he may only join them when he sees fit." *Doe v. Holcomb*, 883 F.3d 971, 977 (7th Cir. 2018).

The caselaw seems to turn on whether the law involves criminal penalties and whether the Attorney General has played a role in its enforcement.  For example, Defendants cite *Doe v. Holcomb*, in which the court held that the Indiana Attorney General was not a proper defendant in a suit challenging an Indiana law requiring those seeking name changes to provide proof of United States citizenship.  883 F.3d at 976–77.  The key factors in that decision were that "there [were] no criminal penalties for violating" the statute and that the Attorney General had "not threatened to do anything, and [could not] do anything, to prosecute a violation." *Id.* at 977.  In other contexts where the challenged statutes did have criminal penalties, courts have found that the Attorney General is a proper defendant because he "is intimately bound up with criminal enforcement at every stage after the initial charges are laid," particularly at the appeal stage. *Whole Woman's Health Alliance v. Hill*, 377 F. Supp. 3d 924, 936 (S.D. Ind. 2019) (allowing suit against Attorney General to challenge

abortion restrictions); *see also Baskin*, 12 F. Supp. 3d at 1152 (allowing suit against Attorney General to challenge same-sex marriage ban).

This case is more like *Baskin* and *Hill* than *Doe*.  First, the relevant statute is "directly criminally enforceable." *Hill*, 377 F. Supp. 3d at 936.  Official Opinions from the Indiana Attorney General "guide[] officials in their efforts to understand specific state statutes . . . ."[2]  Here, the Official Opinion provides guidance on the construction of Indiana's controlled substances statute, Ind. Code § 35-48-2-4, with respect to whether certain cannabis products are covered.  The statute is part of Indiana's criminal code with penalties for various conduct involving controlled substances. *See generally* Ind. Code. § 35-48-4.

Additionally, law enforcement personnel have already used the Official Opinion to support threats of prosecution.  (*See* Wayne County Prosecutor's Letter, ECF No. 1-6.)  The Attorney General has the power to help enforce the law if he deems it "in the public interest," *Baskin*, 12 F. Supp. 3d at 1152; it is not at all out of the realm of possibility that Attorney General Rokita would defend a conviction on appeal or otherwise "consult with and advise" local prosecutors on the law's enforcement, *Hill*, 377 F. Supp. 3d at 936 (quoting Ind. Code § 4-6-1-6).  Though *Hill* than *Doe* are not binding on this Court, and although what force of law, if any, lies in the Official Opinion is unclear, at this stage, the Court finds the Indiana Attorney General to be a proper defendant.

## IV.    Conclusion

---

[2] https://www.in.gov/attorneygeneral/about-the-office/advisory/.

For the foregoing reasons, EPD's Motion for Judgment on the Pleadings, (ECF No. 65), is **granted**.  The claims against the Evansville Police Department are **dismissed with prejudice**.  The clerk is **directed** to terminate the Evansville Police Department as a defendant on the docket.

HPD and Detective Sergeant Hillman's Motion to Dismiss, (ECF No. 67), is **granted**.  The claims against the Huntington Police Department are **dismissed with prejudice**.  The claims against Detective Sergeant Hillman are **dismissed without prejudice**.  The clerk is **directed** to terminate the Huntington Police Department and Detective Sergeant Darius Hillman as defendants on the docket.

The Motion to Dismiss filed by Attorney General Rokita, Huntington County Prosecutor Nix, and Vanderburgh County Prosecutor Moers, (ECF No. 81), is **granted** as to Plaintiffs' claims against the County Prosecutors, **granted** as to Plaintiffs' state-law claims against Attorney General Rokita, and **denied** as to Plaintiffs' federal law claims against Attorney General Rokita.  The state-law claims against all Defendants are **dismissed with prejudice**.  The clerk is **directed** to terminate Huntington County Prosecutor Jeremy Nix and Vanderburgh County Prosecutor Diana Moers as defendants on the docket.

Plaintiffs **can proceed** on their federal claims against Attorney General Rokita. The Court will rule on the pending dispositive motions in due course and after they are fully briefed.

   **SO ORDERED.**

Date: 09/29/2024

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

16

Distribution via CM/ECF

17