UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| 3C, LLC d/b/a 3CHI,<br>MIDWEST HEMP COUNCIL, INC., and<br>WALL'S ORGANICS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:23-cv-01115-JRS-MKK |
| TODD ROKITA, Attorney General, in his<br>official capacity, HUNTINGTON POLICE<br>DEPARTMENT, DETECTIVE SERGEANT<br>DARIUS HILLMAN, in his official capacity,<br>EVANSVILLE POLICE DEPARTMENT,<br>DETECTIVE SERGEANT NATHAN<br>HASSLER, in his official capacity, and<br>VANDERBURGH COUNTY PROSECUTOR<br>DIANA MOERS, in her official capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY IN SUPPORT OF STATE DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

Theodore E. Rokita
Attorney General of Indiana

Office of the Indiana Attorney General      James A. Barta
IGC-South, Fifth Floor                       Solicitor General
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709                    Katelyn E. Doering
Fax: (317) 232-7979                          Deputy Attorney General
Email: James.Barta@atg.in.gov

*Counsel for State Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    Plaintiffs' Preemption and Commerce Clause Claims Fail on the Merits ......................... 2

    A.    Plaintiffs fail to challenge a state law or action that can form the basis for a preemption or Commerce Clause claim ................................................................ 2

    B.    Seventh Circuit precedent forecloses plaintiffs' federal claims ........................... 4

        1.    The Farm Bill does not preempt state regulation of hemp within state borders ................................................................................................ 4

        2.    The Commerce Clause does not foreclose state regulation of hemp ............... 9

        3.    Plaintiffs' remaining arguments lack merit .................................................. 11

II.    Plaintiffs' Federal Claims Against the Attorney General Are Not Justiciable ................ 11

    A.    Plaintiffs lack standing ...................................................................................... 12

    B.    Sovereign immunity bars plaintiffs' claims against the Attorney General .......... 15

III.    Plaintiffs Are Not Entitled to a Permanent Injunction ................................................ 18

CONCLUSION ................................................................................................................ 20

## INTRODUCTION

In its recent order, this Court dismissed plaintiffs' state-law claims seeking to resolve whether the Attorney General's Official Opinion 2023-1 is correct in advising that Indiana's definition of a Schedule I controlled substance encompasses THC variants. ECF No. 140 at 13, 16. Only federal preemption and Commerce Clause claims against the Attorney General remain. *Id.*

As the State Defendants explained, ECF No. 132 at 40–45, plaintiffs' claims that the Official Opinion is violative of the Commerce Clause and is preempted by the federal Farm Bill lack merit. Commerce Clause and preemption claims require a showing of a legal conflict—specifically, a conflict between state and federal commerce regulations. That required ingredient is missing in this case. What plaintiffs are attacking is not a commerce regulation but an official's speech. For although the Official Opinion advises that THC variants like delta-8 are "Schedule I controlled substance[s]" under Indiana law, the Official Opinion is not itself a law and does not determine "the charging or prosecution of individual cases." ECF No. 31-5 at 2, 14. However persuasive the Official Opinion may be, it is not itself a commerce regulation that can conflict with federal law.

Even setting aside the absence of a legal conflict, plaintiffs cannot show that the Official Opinion's analysis regarding controlled substances is preempted or unconstitutional. As the Seventh Circuit explained in rejecting a challenge to Indiana's regulation of smokable hemp, the Farm Bill does not prevent States from regulating hemp within their borders in a manner that is "'more stringent'" than federal law. *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546–47 (7th Cir. 2020) (quoting 7 U.S.C. § 1639p). Indeed, it "expressly permits" more stringent state regulation. *Id.* at 548. So regardless of how the Farm Bill classifies THC variants for purposes of federal law, the Farm Bill does not preempt any state regulation or opinion stating that THC variants constitute Schedule I controlled substances in Indiana. Similarly, as the Seventh Circuit held, the Commerce Clause does not forbid States from regulating the possession of hemp. *See id.* at 548. Plaintiffs'

1

facial attack on the Official Opinion runs headlong into controlling precedent.

Plaintiffs have no persuasive response to the Seventh Circuit's decision. They criticize the Official Opinion for allegedly "misinterpreting state and federal laws," which in plaintiffs' view, classify delta-8 as "hemp" (a permissible substance) rather than "marijuana" (a controlled substance). ECF No. 141 at 11, 14 n.4. But this Court has already held that sovereign immunity bars any claims seeking to resolve the proper interpretation of state law, and however federal law classifies delta-8, Seventh Circuit precedent establishes that States may regulate hemp more strictly than federal law. *See C.Y. Wholesale*, 965 F.3d at 548. Plaintiffs also accuse the Attorney General of "wholly ignor[ing] the merits of this lawsuit on summary judgment." ECF No. 141 at 2. But the Attorney General addressed the merits, ECF No. 132 at 41–51, which leads plaintiffs to argue this Court has "weighed and rejected" those arguments, ECF No. 141 at 8, 11. But this Court has not yet discussed preemption or the Commerce Clause. Those issues remain to be decided.

Summary judgment should be granted to the Attorney General.

## ARGUMENT

### I.     Plaintiffs' Preemption and Commerce Clause Claims Fail on the Merits

As the State Defendants explained, the Attorney General's opinion that THC variants are Schedule I controlled substances under Indiana's definition of a controlled substance does not violate the Commerce Clause and is not preempted by federal law. *See* ECF No. 132 at 32–34.

### A.     Plaintiffs fail to challenge a state law or action that can form the basis for a preemption or Commerce Clause claim

To state a viable Commerce Clause or preemption claim, plaintiffs must show that "two laws" regulating commerce "conflict." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803); *see* ECF No. 132 at 41–42. The gravamen of a dormant Commerce Clause claim is that a State has intruded on Congress's authority to regulate "interstate commerce," *Tenn. Wine & Spirits Retailers*

*Ass'n v. Thomas*, 588 U.S. 504, 514, 522–23 (2019), such as by enacting a "state statute that clearly discriminates against interstate commerce," *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 504 U.S. 353, 359 (1992). And the gravamen of a preemption claim based on a federal statute regulating interstate commerce is similar—that "state and federal laws are so inconsistent that the state law must give way." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977). Here, however, plaintiffs do not allege that any state and federal laws regulating commerce conflict. Plaintiffs' challenge is to an Attorney General "legal opinion," Ind. Code § 4-6-2-5, which while entitled to "thoughtful consideration" by virtue of its persuasive value, is "not controlling" on law enforcement, prosecuting attorneys, or state courts, *Butler Univ. v. State Bd. of Tax Comm'rs*, 408 N.E.2d 1286, 1290 (Ind. Ct. App. 1982).

Although plaintiffs concede that the legal opinion they are challenging "is not binding law," they argue that fact is "irrelevant" because the Official Opinion is influential with certain "prosecutors and police departments." ECF No. 141 at 9. But whether or not that influence is enough for standing purposes, States and state officials do not intrude on Congress's authority over interstate commerce by expressing opinions or offering advice. *Cf. Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017) (explaining that state officials do not violate the Equal Protection Clause by merely speaking, but rather by treating individuals differently). They intrude by actually "discriminat[ing] against out-of-state goods or nonresident economic actors," *Tenn. Wine*, 588 U.S. at 518, or taking actions that "conflict with federal law," *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–80 (2013). A legal opinion, however, does neither of these things. Rather, as plaintiffs' complaints about the actions of "prosecutors and police departments" reveal, any regulation comes through state statutes or enforcement actions taken by "prosecutors and police departments." ECF No. 141 at 9.

Holding that plaintiffs cannot bring a Commerce Clause or preemption challenge against

3

the Official Opinion does not imply plaintiffs lack a way to determine their products' legal status under state law. *Contra* ECF No. 141 at 10. To resolve the legality of their products under state law, plaintiffs could have brought an action in state court. *See* Ind. Code § 34-14-1-2. Or plaintiffs could have chosen to challenge state statutes or enforcement actions by law enforcement and prosecutors in federal court. But plaintiffs did neither. Instead, they brought a facial challenge against a legal opinion, and "that decision comes at a cost." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Consequently, there is nothing "ironic" about the argument that the Official Opinion is not itself a regulation of commerce that conflicts with federal law. *Contra* ECF No. 141 at 10. Rather, the argument simply reflects that there is a difference for constitutional and preemption purposes between regulating commerce and giving advice. *See* ECF No. 132 at 42. Plaintiffs' problem lies with their choice to sue over a state official's speech rather than a regulatory action.[1]

### B.    Seventh Circuit precedent forecloses plaintiffs' federal claims

Regardless, Seventh Circuit precedent forecloses plaintiffs' claims. As the State Defendants explained, neither the federal Farm Bill nor the Commerce Clause displaces Indiana's authority to regulate hemp within its borders. *See* ECF No. 132 at 43–45. "So even if Official Opinion 2023-1 were binding Indiana law . . . it would withstand judicial review." *Id.* at 45.

#### 1.    The Farm Bill does not preempt state regulation of hemp within state borders

As the Seventh Circuit explained in *C.Y. Wholesale*, courts "should not find" that state law is preempted by federal law "'unless that was the clear and manifest purpose of Congress.'" 965 F.3d at 547 (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)); *see also Medtronic, Inc.*

---

[1] Contrary to plaintiffs' suggestion, this Court has not already rejected the Attorney General's arguments regarding the necessary ingredients for a Commerce Clause and preemption claim. *Contra* ECF No. 141 at 9. Rather, this Court reserved final judgment as to "what force of law, if any, lies in the Official Opinion" and how its status affects plaintiffs' claims. ECF No. 140 at 15.

*v. Lohr*, 518 U.S. 470, 485 (1996); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046, 1049 (7th Cir. 2013). In the Farm Bill, however, there is no "clear and manifest" purpose to preempt state regulation of marijuana or hemp. Rather, the Farm Bill states in a provision entitled "No preemption" that "[n]othing in this subsection preempts or limits any law of a State . . . that regulates the production of hemp; and is more stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A); *see* H.R. Rep. No. 115-1072 at 739 (2018) (Conf. Rep.) (States "may limit . . . production and sale . . . within their borders," but not "transportation or shipment . . . through the state"). And "nothing [else] in the 2018 Farm Bill that supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause." *C.Y. Wholesale*, 965 F.3d at 548. Indeed, as another court recently observed, the Farm Bill does not even create enforceable rights against state regulations of industrial hemp. *Green Room LLC v. Wyoming*, No. 24-CV-128-KHR, 2024 WL 3817820, at *5–6 (D. Wyo. July 19, 2024).

Thus, as the Seventh Circuit held in *C.Y. Wholesale*, the Farm Bill does not displace States' traditional authority to regulate the production, sale, or possession of industrial hemp more stringently than federal law. 965 F.3d at 546–48; *accord HW Premium CBD, LLC v. Reynolds*, No. 4:24-CV-00210-SMR-SBJ, 2024 WL 3548320, at *7 (S.D. Iowa July 25, 2024) ("There is nothing in the Farm Bill that stands for the proposition that Congress intended to preempt states from regulating any part of the hemp cultivation, production, manufacturing, or sales process, except the express preemption for interstate transportation."); *Hemp Quarters 605 LLC v. Noem*, No. 3:24-CV-03016-ECS, 2024 WL 3250461, at *4 (D.S.D. June 29, 2024) ("Farm Bill 'says nothing about whether a state may prohibit possession or sale of industrial hemp'"); *N. Va. Hemp & Agric. LLC v. Virginia*, 700 F. Supp. 3d 407, 417–20 (E.D. Va. 2023). Indiana is therefore free to "further regulat[e]" hemp and THC variants, including "delta-8," within its borders. *Duke's Invs. LLC v.*

*Char*, No. CV 22-00385 LEK-RT, 2022 WL 17128976, at *6 (D. Haw. Nov. 22, 2022).

Plaintiffs have no cogent response. They argue that *C.Y. Wholesale* is inapplicable because there has been "no change in state or federal law." ECF No. 141 at 11. But plaintiffs point to no language in *C.Y. Wholesale* suggesting that its preemption analysis is good only for situations in which a state statute has changed. And the Seventh Circuit's analysis resists any such narrowing. As the Seventh Circuit explained, a party asserting that federal law preempts state law must show Congress had the "'clear and manifest purpose'" of preempting state law. 965 F.3d at 547. But federal law "expressly authorizes the states to continue to regulate hemp," providing that "nothing preempts any state law regulating hemp production, even if it is 'more stringent' than federal law." *Id.* at 546. And the Seventh Circuit saw "nothing in the 2018 Farm Bill that supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause." *Id.* at 548; *cf. Patriotic Veterans*, 736 F.3d at 1049 ("The fact that a state has more stringent regulations than a federal law does not constitute conflict preemption."). The "Seventh Circuit['s]" opinion thus establishes that the Farm Bill "does not preclude a state from prohibiting the possession and sale of industrial hemp or hemp products within the state." *N. Va. Hemp*, 700 F. Supp. 3d at 418; *see Hemp Quarters*, 2024 WL 3250461, at *4.

Plaintiffs also argue that the Farm Bill's definition of "hemp" does not distinguish between "synthetic" and "naturally occurring" substances, accusing the Attorney General of having ignored this point. ECF No. 141 at 2, 14–15. But as the State Defendants observed, ECF No. 132 at 49–51, the Farm Bill only precludes states from "prohibit[ing] the transportation or shipment of hemp . . . through the State," Pub. L. No. 115-334, tit. X, § 10114, 132 Stat. 4914 (2018) (codified at 7 U.S.C. § 1639*o* note). The Farm Bill preserves state authority over the "cultivation," "production," "possession," and "sale" of hemp and hemp products. *C.Y. Wholesale*, 965 F.3d at 546–47. It thus does

not matter for preemption purposes whether the Farm Bill's definition of "hemp" is so expansive as to include synthetic substances. *See Green Room*, 2024 WL 3817820, at *5; *HW Premium*, 2024 WL 3548320, at *6–7. The point remains that "nothing in the 2018 Farm Law . . . supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause." *C.Y. Wholesale*, 865 F.3d at 548.

Plaintiffs' decisions (ECF No. 141 at 14–15) do not establish otherwise. Apart from *Bio Gen, LLC v. Sanders*, 690 F. Supp. 3d 927 (E.D. Ark. 2023), *appeal filed*, No. 23-3237 (8th Cir.), none of the cases address preemption or the Commerce Clause. They address the legal status of products under federal or state law.[2] As for *Bio Gen*, that decision conceded that the Farm Bill permits States to "continue to enforce laws regarding the growing of hemp within [their] borders." 690 F. Supp. 3d at 940; *see id.* at 939 ("Clearly, under the 2018 Farm Bill, Arkansas can regulate hemp production and even ban it outright if it is so inclined."). The court objected to provisions of Arkansas law which, in the court's view, conflicted with the Farm Bill's prohibition on prohibiting hemp's transportation "through" a State. *Id.* at 939 (quoting 7 U.S.C. § 1639o note). But that provision does not help plaintiffs. Plaintiffs' declarants cite no evidence related to their transportation of THC variants *through* Indiana for sale in another State; they complain that plaintiffs and their members have been prevented from selling products containing THC variants *in* Indiana. 3Chi claims that the Official Opinion "is hurting business" because their retail customers "are scared to

---

[2] Even on their own terms, plaintiffs' decisions do not establish their products are legal. Federal law defines hemp as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). But plaintiffs' products contain "purely synthetic drugs" that are not "hemp-derived," ECF No. 129-1 at 18–20 (Hudalla Decl. ¶¶ 54–60), and that require "starting materials" that cannot be "found in nature," *id.* at 26 (¶ 83).

do business" and they "lost a banking relationship here in Indiana." Journay Dep. Tr. 11:10–20, ECF No. 78-2 at 13. MHC claims that its retailer members are "all very concerned that somebody's going to walk in and arrest them and clear their shelves," Petty Dep. Tr. 43:5–9, ECF No. 78-1 at 45. And Wall's Organics claims that Detective Sergeant Hassler visited its Evansville store and promised to file charges if staff did not "remove all low THC hemp extract products from its shelves." ECF No. 112-4 (Wall Decl. ¶¶ 5–10). These assertions all pertain to in-state activities. "[N]othing in the 2018 Farm Law," however, "supports the inference that Congress was demanding that states legalize industrial hemp" within their borders. *C.Y. Wholesale*, 865 F.3d at 548.

Nor are plaintiffs correct that the "Official Opinion prohibit[s] the transportation of hemp through Indiana, in violation of the 2018 Farm Bill." ECF No. 141 at 15. As an initial matter, plain-tiffs lack standing to raise this argument because their alleged injuries do not arise from shipping hemp *through* Indiana for sale in another State. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Additionally, the Official Opinion does not address "[i]nterstate commerce" in hemp, ECF No. 31-5 at 11 n.70, or what can be charged as a violation of Indiana's controlled substance laws, *id.* at 2, 14; it addresses only how controlled substances are defined for purposes of Indiana's controlled substance laws, *id.* at 2, 14. And as the Seventh Circuit held in *C.Y. Wholesale*, the Farm Bill's "express preemption clause" does not "preclude[] a state from prohibiting the possession and sale of industrial hemp within the state." 965 F.3d at 547. This means that plaintiffs have failed to establish that there is no set of circumstances in which the Offi-cial Opinion's reading of state law can be validly applied, which "is sufficient to rebuff" their preemption challenge. *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 588–89 (1987).

### 2.    The Commerce Clause does not foreclose state regulation of hemp

*C.Y. Wholesale* forecloses plaintiffs' Commerce Clause challenge too. As that opinion explains, under the dormant Commerce Clause, a State may not regulate in a way that "clearly discriminates against interstate commerce . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *C.Y. Wholesale*, 965 F.3d at 548 (quoting *Fort Gratiot*, 504 U.S. at 359); *see H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949) (States may not "advance their own commercial interests by curtailing the movement of articles of commerce," but may enact "even burdensome regulations in the interest of local health and safety"). But simply because a law "affects interstate commerce" does not mean that it "*discriminates* against interstate commerce," either on its face or in practical application (which is determined through *Pike* balancing). *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501–02 (7th Cir. 2017).

Applying those standards in *C.Y. Wholesale*, the Seventh Circuit rejected the argument that Indiana's prohibition on the manufacture, delivery, and possession of smokeable hemp discriminated against interstate commerce, explaining that the prohibition "applie[d] equally to all smokable hemp, whether produced inside or outside of Indiana." 965 F.3d at 544, 548. That holding controls here. ECF No. 132 at 46. Although the Official Opinion explains that Indiana's definition of a Schedule I controlled substance includes "THC variants, including but not limited to delta-8," the Official Opinion does not say that the classification depends on a product's origin. ECF No. 31-5 at 2; *see id.* at 10–12. Similarly, the statutory definition of a controlled substance that the Official Opinion interprets makes no reference to geographic origin. *See* Ind. Code § 35-48-2-4(d)(32). Thus, there is no Commerce Clause issue because Indiana's definition of a controlled substance and the Official Opinion's analysis of that definition "appl[y] equally to all" THC variants, "whether produced inside or outside of Indiana." *C.Y. Wholesale*, 965 F.3d at 548.

Plaintiffs again argue that there has been no change in state law. ECF No. 141 at 11–12. Again, however, plaintiffs do not explain why that fact matters under *C.Y. Wholesale*. There, the Seventh Circuit's point was that the Commerce Clause prohibits only discrimination against interstate commerce; it does not preclude a State from criminalizing the production, sale, or possession of hemp without regard to its geographic origin. 965 F.3d at 548; *see N. Va. Hemp*, 700 F. Supp. 3d at 426. Nor do plaintiffs gain anything by asserting that the Official Opinion impacts interstate transportation. *See* ECF No. 141 at 15. The Official Opinion does not address "[i]nterstate commerce" in hemp specifically, ECF No. 31-5 at 11 n.70, and *C.Y. Wholesale* rejected the argument that it "burdens interstate commerce" to regulate the possession of smokable hemp in Indiana. 965 F.3d at 548; *see Park Pet Shop*, 872 F.3d at 502 (explaining there is no discrimination when "all" participants in regulated industry "are similarly disadvantaged"). If regulating possession of smokable hemp does not burden interstate commerce, then neither does regulating possession of other hemp or hemp products.

In their briefing, moreover, plaintiffs have not argued that the Seventh Circuit's decision is incorrect. Nor have plaintiffs argued under *Pike* balancing that any prohibition on the possession of THC variants has the practical effect of discriminating against interstate commerce, or that a prohibition on the possession of THC variants fails rational-basis review. Plaintiffs have staked their case on the proposition that regulating THC variants in any way constitutes discrimination against interstate commerce, ECF No. 113 at 21; ECF No. 141 at 2—an argument that *C.Y. Wholesale* rejected. Simply put, plaintiffs have failed to carry their burden of showing that there is "no set of circumstances" under which Indiana's controlled substances laws and the Official Opinion's analysis of those laws can be validly applied. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### 3.    Plaintiffs' remaining arguments lack merit

That leaves plaintiffs' assertion that the Attorney General "wholly ignore[d] the merits of this lawsuit on summary judgment." ECF No. 141 at 2; *see id.* at 14–15. That assertion is incorrect: Section II of the Attorney General's initial summary-judgment brief explained why plaintiffs' preemption and Commerce Clause claims lack merit, ECF No. 132 at 41–46—which is why plaintiffs elsewhere argue (incorrectly) that "the Court already weighed and rejected [his] argument[s]," ECF No. 141 at 11; *see Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 927 (7th Cir. 2015) (making argument even in "a relatively cursory fashion" is sufficient). Plaintiffs confuse waiver with whether an argument is a winning one. Moreover, since the Attorney General's initial brief on summary judgment was in support of his cross-motion for summary judgment, no principle of waiver precludes the Attorney General from addressing in this reply any arguments that plaintiffs make in their opposition brief. *See Ndzana v. Ball State Univ.*, No. 1:22-cv-01540-JMS-MJD, 2024 WL 473711, at *1–2 (S.D. Ind. Feb. 7, 2024) (making "responsive argument" in reply brief was "completely appropriate"). All the Attorney General's Commerce Clause and preemption arguments are properly before the Court.

## II.    Plaintiffs' Federal Claims Against the Attorney General Are Not Justiciable

While plaintiffs' federal claims fail as a matter of law, this Court need not reach the merits. Although the Attorney General recognizes that the Court determined for purposes of a motion to dismiss that it had jurisdiction over plaintiffs' federal claims against the Attorney General, ECF No. 140 at 12–14, federal courts have a continuing obligation through all "stages of the litigation" to assure themselves of their jurisdiction, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987). And in ruling on the motion to dismiss, this Court did not make a final determination regarding Official Opinion 2023-1's legal status. *See*

ECF No. 140 at 12–13. Respectfully, the Attorney General submits that plaintiffs do not have standing to bring a claim over a legal opinion's issuance, and sovereign immunity bars plaintiffs' remaining federal claims against the Attorney General for issuing Official Opinion 2023-1.

### A.    Plaintiffs lack standing

To demonstrate standing, a party must show that an asserted injury "fairly can be traced to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976), and is "likely to be redressed" by a favorable judgment, *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (citing *Lujan*, 504 U.S. at 560–61). Plaintiffs argue that standard is satisfied here because the Attorney General is "the source of the Official Opinion" and, as "the state's top law enforcement official," his legal advice has an "impact" on "the decisions of local prosecutors and police," as well as on financial institutions seeking to conform their conduct to state law. ECF No. 141 at 3–4 (quoting ECF No. 140 at 12). But the injuries alleged are neither traceable to the Official Opinion nor redressable by a favorable judgment against the Attorney General.

"Notably," while plaintiffs have sued the Attorney General in this case, plaintiffs' alleged injuries are all attributable to the actions of *others*. *See Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024). Plaintiffs do not claim that the Attorney General himself has ordered police raids, initiated prosecutions, or directed financial institutions not to do business with plaintiffs. *See* Journay Dep. Tr. 72:10–16, ECF No. 78-2 at 74; Petty Dep. Tr. 40:16–41:17, ECF No. 78-1 at 42–43. Indeed, plaintiffs argue that the Attorney General's Official Opinion is "not binding" on police, prosecutors, and financial institutions. ECF No. 141 at 5. Rather, plaintiffs' theory is that the Attorney General's Official Opinion has persuaded police, prosecutors, and financial institutions to interact with plaintiffs in a particular way. *See* ECF No. 112-1 at 2 (Journay Decl. ¶ 8); ECF No. 112-3 at 2 (Petty Decl. ¶¶ 6–7); ECF No. 112-4 at 2 (Wall Decl. ¶¶ 6–10); Journay Dep. Tr. 11:10–20, ECF No. 78-2 at 13; Petty Dep. Tr. 43:5–7, ECF No. 78-1 at 45. But as the Supreme Court recently explained,

redressability "'requires that the court be able to afford relief *through the exercise of its power*'" against the defendant, "'not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power.'" *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). Plaintiffs cannot show that a decree against the Attorney General—as opposed to the opinion explaining the decree—would cause police, prosecutors, and banks to act differently.

In Indiana, police and prosecutors do not derive their power to arrest and to bring charges from advisory opinions of the Attorney General. Advisory opinions can be influential. *See Butler Univ.*, 408 N.E.2d at 1290. But that fact does not change that those opinions are "not controlling"; they are legal opinions that act through their persuasive force. *Id.* at 1290; *see Dodd v. State*, 18 Ind. 56, 66–67 (1862); *State ex rel. Lynch Coal Operators' Reciprocal Ass'n v. McMahan*, 142 N.E. 213, 213 (Ind. 1924). A decree against the Attorney General for issuing an opinion thus would do "nothing to change" the power that police and prosecutors have to make arrests or bring charges for the manufacture, sale, or possession of THC variants. *United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (rejecting argument that plaintiffs had standing to sue over "Guidelines" that told federal officials "how to exercise their prosecutorial discretion"); *see Murthy*, 144 S. Ct. at 1995 (observing that, in a suit against federal officials, third parties would not "be obliged to honor an incidental legal determination the suit produced"). And the possibility that police and prosecutors might change how they exercise their power "in light of a judicial opinion reasoning that the [Official Opinion]" urges preempted or unconstitutional actions is not enough. *Texas*, 599 U.S. at 691 (Gorsuch, J., concurring).; *see Doe v. Holcomb*, 883 F.3d 971, 978–79 (7th Cir. 2018).

The function of Attorney General opinions under Indiana law distinguishes this case from *Pueblo of Taos v. Andrus*, 475 F. Supp. 359 (D.D.C. 1979). That decision concerned an opinion from the U.S. Attorney General that did not merely provide persuasive advice on the meaning of

federal law, but that "resolved" an "interagency dispute" between two federal agencies, reversing an order from one of the agencies that "created" "important rights" for the tribe bringing suit. *Id.* at 365. The U.S. Attorney General's opinion thus had a legal effect that could be altered by a judicial decree vacating the opinion. *See id.* By contrast, Official Opinion 2023-1 did not create or destroy any rights. It advised about the status of THC variants under Indiana law, explaining that "prosecuting attorneys and law enforcement officers" would have to make their own "decisions" about the "charging [and] prosecution of individual cases." ECF No. 31-5 at 2. Thus, a judicial decree against the Official Opinion would not immunize plaintiffs from prosecution.

Moreover, while this Court previously stated that a "favorable decision *may*" impact plaintiffs' operations, ECF No. 140 at 13 (emphasis added), plaintiffs have not come forward with evidence on summary judgment showing that a favorable judgment *would* change how police, prosecutors, or financial institutions interact with plaintiffs. For example, plaintiffs cite no statement from law enforcement or prosecutors saying that they would stop deeming THC variants a controlled substance in the absence of the Official Opinion. As early as 2021—well before the Official Opinion was issued—the Indiana State Police indicated to reporters that delta-8 products were "arguably covered under Title 35 as a Schedule 1 Controlled Substance separate from the allowances for hemp-derived products that contain no more than 0.3% Delta-9 THC." ECF No. 142-1 at 4. Prosecuting attorneys have also charged violations of Indiana law for possession of delta-8 products without relying on the Official Opinion—indeed, while arguing that the Official Opinion is not "binding" on them. ECF No. 142-3 at 4; *see also* ECF No. 142-4, ECF No. 142-5. Similarly, plaintiffs cite no evidence that banks' decisions would change based on a favorable judgment—indeed, 3Chi has already found another financial institution, Journay Dep. Tr. 54:23–55:2, ECF No. 78-2 at 56–57, and one MHC member preserved a relationship with his bank despite discussions about

the Official Opinion's impact, Petty Dep. Tr. 39:13–24, ECF No. 78-1 at 41. Neither do plaintiffs present any evidence supporting alleged future harms to financial relationships or business good-will. ECF No. 107 at 8–9; *see Murthy*, 144 S. Ct. at 1995 ("fears of hypothetical future harm that is not certainly impending" and not "traceable to the *defendants*" insufficient for standing). Plaintiffs can "only 'speculat[e] about the decisions of third parties.'" *Murthy*, 144 S. Ct. at 1994.

Lastly, plaintiffs cannot show that a favorable judgment on their preemption and dormant Commerce Clause claims would redress their injuries because of other legal barriers to the sale of their products. ECF No. 132 at 27–28; *see also* ECF No. 142-2. Plaintiffs assert that fact is "irrele-vant." ECF No. 141 at 5 n.2. But as another judge in this District recently observed, redressability is absent where other unchallenged laws "would each independently" bar a plaintiff's course of action. *Satanic Temple, Inc. v. Rokita*, No. 1:22-CV-01859-JMS-MG, 2023 WL 7016211, at *10 (S.D. Ind. Oct. 25, 2023). At the very least, a factual dispute over whether plaintiffs' products con-tain substances that would be illegal regardless of delta-8's status means judgment cannot be granted to plaintiffs.

### B.    Sovereign immunity bars plaintiffs' claims against the Attorney General

Separately, sovereign immunity bars plaintiffs' remaining federal claims. Generally, sover-eign immunity bars suit against States or state officers acting in their official capacities. *See Mead-ows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988); *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440–41 (7th Cir. 1992). Under the *Ex parte Young* doctrine, courts recognize an exception to sovereign immunity to permit suits for "prospective relief to enjoin on-going violations of federal law." *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). But that exception is "narrow." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996); *see Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). It does not apply "in every case where prospective declaratory and injunctive relief is sought

against an officer." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). Rather, *Ex parte Young* applies in certain situations in which parties seek to "enjoin the enforcement" of an allegedly unconstitutional state statute by "naming a state official who has 'some connection with the enforcement'" of that statute. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).

In its prior order, this Court stated that *Ex parte Young* applies in this case because the statute that the Official Opinion discusses is "directly criminally enforceable" and Attorney General opinions "guide[] officials" charged with enforcement. ECF No. 140 at 15. Respectfully, the Attorney General submits that reasoning overlooks critical limitations on *Ex parte Young*. In discussing *Ex parte Young*, the Supreme Court has emphasized that the doctrine applies only where *the defendant "state officer[]"* has "threaten[ed] and [is] about to commence" an enforcement action against the plaintiff. *Ex parte Young*, 209 U.S. at 156 (emphasis added). Put another way, an enforcement action by the defendant state officer himself "must be imminent." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992); *see Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (there must be a "real, not ephemeral, likelihood or realistic potential" that the state officer will take enforcement action against the plaintiff). That limitation reflects *Ex parte Young*'s origins in the anti-suit injunction, an equitable device that allows a party to preemptively assert what would otherwise be a potential defense in a suit brought by the state officer. *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014); John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 996–1001 (2008).

In this case, however, there is no evidence that the Attorney General is about to initiate an enforcement action against plaintiffs. As this Court recognized, ECF No. 140 at 14, "the general rule in Indiana is that the Attorney General cannot initiate prosecutions," *Doe*, 883 F.3d at 977. True, the Attorney General may "join" prosecutions initiated by others. *Id.*; *see* ECF No. 140 at 15.

But plaintiffs have presented no evidence that *the Attorney General* will imminently join a prose-cution against them should a prosecuting attorney decide to file one. *Cf. Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (no "formal notice of intent to sue for specific conduct"); ECF No. 31-5 at 2, 14 ("The OAG cannot opine on the charging or prosecution of individual cases and defers to the prosecuting attorneys and law enforcement officers for those decisions."). All of plaintiffs' evidence concerns the possibility that a *prosecuting attorney* will act. *See* ECF No. 140 at 15. More-over, even in situations in which the Attorney General joins an ongoing prosecution, his role is to "advise" and to "assist"—not to conduct the prosecution independently. Ind. Code § 4-6-1-6; *see State ex rel. Steers v. Holovachka*, 142 N.E.2d 593, 603 (Ind. 1957). That renders *Ex parte Young* a particularly poor fit here since plaintiffs can only speculate about whether any advice or assistance the Attorney General might render would relate to the issues discussed in Official Opinion 2023-1.

The Attorney General's general role in providing advice and defending convictions on ap-peal is no substitute for the lack of an imminent enforcement action. *Contra* ECF No. 141 at 7. Under *Ex parte Young*, the "proper part[y] to litigation challenging [a] law" is "the official who is charged with the statute's enforcement" and who "has either enforced, or threatened to enforce, the statute against the plaintiffs." *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993). Federal appeals courts thus have held that *Ex parte Young* does not permit suit against state attorneys general for rendering advice regarding a state statute, particularly where the advice is "not . . . binding" on the officials who took action, *id.* at 113–14, or for discharging a general duty to defend state actions, *id.* at 115–16; *see Doe*, 883 F.3d at 977; *Sherman*, 980 F.2d at 441; *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (*Ex parte Young* is inapplicable where Attorney General defends state laws "as a representative of the State's interest"). Those holdings—which reflect that *Ex parte Young* "does not apply when the state is the real, substantial party in interest,"

17

*Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up)—apply here.

Plaintiffs urge the Court to embrace a different view of sovereign immunity suggested by *Arnold v. Sendak*, 416 F. Supp. 22 (S.D. Ind. 1976), *Baskin v. Bogan*, 12 F. Supp. 3d 1144 (S.D. Ind. 2014), and similar cases. ECF No. 141 at 8. In *Doe*, however, the Seventh Circuit seemingly disapproved of *Arnold*'s reasoning, placing a "[b]ut see" before a citation to *Arnold*, and then expressly rejected *Baskin*'s "suggest[ion]" that the Indiana Attorney General could be sued based on his ability to "assist a local prosecuting attorney in a perjury prosecution." *Doe*, 883 F.3d at 977. As the Seventh Circuit explained, the Attorney General's power to "assist a local prosecuting attorney was "too attenuated," "especially considering that the Attorney General could not initiate the prosecution himself." *Id.* For the Attorney General to be sued under *Ex parte Young*, the Seventh Circuit concluded, the Attorney General must have either "enforced" or "threatened to enforce the allegedly [unlawful] statute." *Id.* (quoting *Children's Healthcare*, 92 F.3d at 1415). He has done neither here. What the Attorney General has done is issue a legal opinion advising on state law. That the opinion carries weight with certain prosecutors and law enforcement does not render it an enforcement action by the Attorney General against plaintiffs. *See 1st Westco*, 6 F.3d at 113–14.

### III.    Plaintiffs Are Not Entitled to a Permanent Injunction

In all events, plaintiffs are not entitled to a permanent injunction. Plaintiffs suggest that they are entitled to a permanent injunction if they establish "success" on the merits. ECF No. 141 at 12–13. But a party who wins a lawsuit is not automatically entitled to injunctive relief. Instead, a party must demonstrate irreparable injury, the unavailability of an adequate remedy at law (*e.g.*, the unavailability of damages), a balance of equities favoring the plaintiff, and no disservice to the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982)). All four factors cut against plaintiffs.

First, plaintiffs will not suffer irreparable harm absent injunctive relief. As this Court and

the Attorney General explained, plaintiffs' alleged fiscal harms are not irreparable, plaintiffs have not shown criminal prosecution is imminent, and injunctive relief against the Attorney General would not prevent third parties not before this Court from independently initiating prosecutions or declining to do business with plaintiffs. ECF No. 107 at 2–9; ECF No. 132 at 47–48. Plaintiffs do not specifically address arguments that monetary harms can be quantified and that injunctive relief is inappropriate in the absence of an imminent threat of prosecution. *See* ECF No. 141 at 13 n.3 (citing ECF No. 87 at 24–32) (purporting to "incorporate by reference" arguments that plaintiffs made in connection with their motion for a preliminary injunction and that this Court rejected).

Instead, plaintiffs accuse the Attorney General of implying an injunction "would somehow be meaningless." ECF No. 141 at 13. That is not the Attorney General's argument. Rather, his argument is that an injunction would not remedy plaintiffs' alleged harms—such as possible prosecution or inability to do business with certain financial institutions—because they stem from "the independent action of some third party not before the court." *Murthy*, 144 S. Ct. at 1986 (quoting *Simon*, 426 U.S. at 41–42). Recall that the Official Opinion does not operate by commanding law enforcement and prosecutors to act in a particular way, but by persuasion. *See* pp. 13–15, *supra*. So a judicial decree directed against the Attorney General's Official Opinion would not "oblige[]" non-parties to this litigation, such as prosecutors and financial institutions, to act differently. *Murthy*, 144 S. Ct. at 1995. Plaintiffs would still face the prospect that, independently of the Official Opinion, prosecutors and financial institutions would examine the competing arguments about the meaning of Indiana statutes regulating controlled substances, conclude that THC variants constitute Schedule I controlled substances, and act accordingly.

Even apart from plaintiffs' inability to show irreparable harm, there are reasons to deny

19

injunctive relief. Those reasons include that an injunction would interfere with the Attorney General's duty to advise state officials, *see* Ind. Code § 4-6-2-5; that it would prevent a state official from opining on an important legal issue, *see Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009); and that the State has a strong interest in enforcing criminal laws designed to protect the health, safety, and welfare of its people, *see Price v. State*, 622 N.E.2d 954, 959 (Ind. 1993); ECF No. 132 at 48–50. In short, the appropriate remedy for a legal opinion with which plaintiffs disagree is not to order the opinion retracted. *Cf. 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 498 (1996) ("the remedy to be applied is more speech, not enforced silence").

## CONCLUSION

The State Defendants respectfully ask this Court to grant the State Defendants' Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment, and to enter judgment for the State Defendants.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

By: /s/ James A. Barta
James A. Barta
Solicitor General

Katelyn E. Doering
Deputy Attorney General

*Counsel for State Defendants*

20